### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

Case No.: 1:26-cv-20389-BB

BRIAN EVANS;

      Plaintiff,

v.

CHURCH OF SCIENTOLOGY
INTERNATIONAL, SKY DAYTON, and
DOES 1-10

      Defendants.

_____/

### <u>DEFENDANT'S, CHURCH OF SCIENTOLOGY INTERNATIONAL, MOTION TO DISMISS COMPLAINT</u>

Defendant, Church of Scientology International ("CSI"), respectfully moves for an order dismissing Plaintiff's, Brian Evans ("Evans" or "Plaintiff"), Complaint *with prejudice*, pursuant to Fed. R. Civ. P. 12(b)(2) lack of personal jurisdiction, 12(b)(5) insufficient service of process, and 12(b)(6) failure to state a claim upon which relief can be granted.

This Motion is based upon the allegations in the Complaint, matters upon which the Court may take judicial notice, the Declaration of Lynn Farny attached hereto as **Exhibit "A"** [hereinafter Dec. L. Farny] and the Declaration of Kendrick Moxon attached hereto as **Exhibit "B"** [hereinafter Dec. K. Moxon], and the arguments addressed in the below Memorandum of Law. As discussed herein, this Court lacks personal jurisdiction over CSI (a California nonprofit religious corporation); the claims are hopelessly beyond the statute of limitations; the claims are two decades beyond the statute of repose; and the torts alleged are

1

constitutionally protected activities. And, because none of these infirmities can be corrected by amendment of the Complaint, any purported attempt to amend would be futile.[1]

 Accordingly, CSI moves that the case be dismissed *with prejudice*.

## MEMORANDUM OF LAW

## I. INTRODUCTION

 CSI, a California nonprofit religious corporation, is the Mother Church of the Scientology religion. Evans claims that in 1991, after Evans allegedly declined to become a member of the Scientology religion, Defendant, Sky Dayton ("Dayton") declined to allow Evans to benefit from a successful internet concept that Dayton would not even conceive for 3 more years. Plaintiff also alleges that CSI had the temerity to mail Evans religious literature in Florida, causing Evans extreme emotional distress. Evans alleges he "realized" in November 2025 that there was a connection between Dayton and CSI, and that an alleged diagnosis of PTSD in July 2025 should toll the statute of limitations for 35 years. However, as discussed further herein, this case should be dismissed *with prejudice* because:

 1. Evans' Complaint was filed more than 20 years after Florida's applicable statutes of limitations and statute of repose expired and the statute of repose cannot be tolled by Evans' alleged subsequent PTSD diagnosis.

 2. Even if the Court accepts all of the alleged facts as true (though Evans' Complaint is replete with conclusory allegations that are insufficient as a matter of law), there is no basis *in fact* to assert personal jurisdiction over CSI, since the factual predicate for

---

[1] Evans is a serial *pro se* litigant. He has sued many persons and entities perceived as "deep pockets," with the manifest goal of inducing settlement with unmeritorious and vexatious claims. This Complaint is just the latest such attempt. *See* Dec. K. Moxon at ¶ 6, Exhibit "1" (listing various cases filed by Mr. Evans in various courts evidencing a pattern of vexatious claims/litigation).

invoking personal jurisdiction over CSI is based *entirely* on Evans' allegation that CSI communicated with Evans in Florida via mailed letters and religious books. As stated below, CSI provides a controverting declaration refuting this claim confirming that CSI has never had any communication, relationship or connection with Evans in any fashion whatsoever.

      3.     Nevertheless, Plaintiff's allegation that sending unsolicited religious books and letters through the mail, does not satisfy any of the elements of the tort of intrusion upon seclusion or any other tort, and such conduct is in fact constitutionally protected free speech.

      As such, this case is without merit and, based on Evans' history of pro se meritless filings, is nothing more than a sham and an abuse of the judicial system. CSI respectfully requests that this Court dismiss the Plaintiff's Complaint with prejudice.

## II.   <u>STATEMENT OF FACTS</u>

      CSI is a California nonprofit corporation based in Los Angeles. Dec. L. Farny at ¶ 5. CSI is not registered to do business in Florida and has no agent for service of process in the state. *Id.* at ¶ 9–11. It operates no business and has no office and no employees in Florida. *Id.* CSI does not own or operate any individual Church of Scientology. *Id.* at ¶ 6. Rather, each Church of Scientology is separately incorporated, with its own officers and directors and staff. *Id.* ¶ 8. CSI does not conduct business or maintain an operational presence in Florida, and has no office, employees, representatives, or agents in Florida. *Id.* ¶ 9–11.

      In his Complaint, Evans alleges he was introduced to Scientology in <u>**1991**</u> but when "Plaintiff made clear that he would not join Scientology," Defendant Dayton allegedly cut off communication with him and withdrew Plaintiff's involvement in EarthLink as an "immediate

consequence" of refusing to join this religion. Complaint at 3.[2] Nowhere in the Complaint does Plaintiff state any relationship between EarthLink and CSI or the Scientology religion. In fact, EarthLink did not even actually exist at the time. *See* Complaint at 2 ("business venture that *later* became EarthLink") (emphasis added).

Plaintiff then alleges that he experienced unwanted contacts for 30 years from CSI via mailed letters, emails, recruiting materials, and invitations to return. Complaint at 10.[3] Plaintiff alleges that he only appreciated the "causal connection" between Dayton's "cutoff" and CSI's purported conduct in 2025—more than 30 years later. Plaintiff alleges this "realization" caused him "significant emotional distress, anxiety, worsening PTSD symptoms, sleep disruption, and psychological distress." Complaint at 10–11. Furthermore, Evans alleges that Scientology "continued contacting Plaintiff even after this point, including sending a letter to Plaintiff in or about January 2026, only days before the filing of this action." Complaint at 11. However, in the Complaint, Plaintiff makes no specific factual allegation regarding how or when CSI communicated with Plaintiff. Rather, Plaintiff's allegations are conclusory and generalized— alleging that "Scientology" or "Scientology defendants" communicated with him.

Plaintiff also alleges that he was diagnosed with PTSD in July of 2025. Complaint at 7. This alleged condition is asserted to have "impaired Plaintiff's ability to process, pursue, and timely act" on the alleged torts that occurred 35 years *earlier*. As discussed further herein, the

---

[2] In violation of Rule10(b), Federal Rules of Civil Procedure, the Plaintiff's Complaint does not contain numbered paragraphs. Therefore, references to the Complaint herein only reference page numbers.
[3] However, as admitted by Plaintiff in *his* Opposition to Defendant Dayton's Motion to Dismiss, [DE 29], the purported CSI communications were really from the Church of Scientology Celebrity Centre International—**not CSI**, which is a **separate and independent** corporation. Dec. L. Farny at ¶ 5–12. As such, the admission by Evans clarifies it is now an undisputed fact.

PTSD diagnosis does not toll the statute of limitations or the statute of repose as a matter of law, which are several years beyond expired.

As such, Plaintiff's claims fail to state a claim on which relief can be granted and must be dismissed *with prejudice.*

### III.   <u>LEGAL ARGUMENTS</u>

#### A.   **The Complaint is Time-Barred**

The Complaint recognizes that the alleged events occurred **<u>more than 30 years after</u>** the expiration of Florida's four-year statute of limitations for intentional torts, Fla. Stat. § 95.11(3)(o), and **<u>more than 20 years after</u>** the statute of repose (but for the unconstitutional "mailing" claim). In advance recognition of this obvious bar to proceed with his claims, Plaintiff alleges he suffered from PTSD. But PTSD does **<u>not</u>** toll the statute or revive a statute of limitation that has already passed, as it has here.

Plaintiff's alleged PTSD onset was **<u>over 20 years after</u>** all conceivable statutes of limitations against the Defendants herein had already run. Instead, he merely includes the 2025 date of alleged diagnosis. The absence of any allegation of the date of initial onset of his alleged PTSD appears to be a deliberate effort to deceive the Court into believing that Plaintiff has a legitimate excuse for missing the filing deadline by **<u>more than 20 years</u>**. Indeed, the Complaint affirmatively states that "for many years [after 1992], Plaintiff ***understood*** *only* ***that he had been wronged*** or cut off . . . ." Complaint at 9 (emphasis added). This judicial admission is fatal to the Complaint on the statute of limitation issue. It is equally fatal to a statute of repose defense. Whether or not Plaintiff allegedly experienced PTSD in later years is legally irrelevant to the issue.

In Florida and every other state in the United States, the statute of limitations clock begins to run whenever a party has enough information to excite attention and prompt further investigation, not when the plaintiff has full knowledge of the reasons why a defendant harmed

the plaintiff. *See, e.g.*, *Cherney v. Moody*, 413 So.2d 866 (1982). A plaintiff is deemed to know what a reasonable inquiry would have revealed for purposes of triggering the commencement of the statute of limitations. Moreover, an action for fraud must be commenced **within 12 years** of the date of the commission of the alleged fraud, regardless of the date the fraud was or should have been discovered. Fla. Stat. § 95.031(2)(a). The fraud was alleged to have occurred in 1991 or 1992, but Plaintiff admittedly filed the Complaint **more than 21 years after** the absolute deadline in this statute of repose.

Tolling the statute of limitations due to mental illness or incapacity, including conditions such as PTSD, generally requires that the mental condition be so severe that the plaintiff is incapable of understanding or acting upon his legal rights. Courts have often held that mental illnesses which do not fully incapacitate an individual—for instance, where the plaintiff can work, communicate, or manage personal affairs—do **not** justify tolling. Indeed, Florida law is particularly restrictive on the issue of tolling due to mental disability. Florida Statute Section 95.051 states that "[a] disability or other reason does not toll the running of *any* statute of limitations except those specified in this section . . . ." *See* Florida Statute § 95.051(2). With respect to claims of disability, Fla. Stat. § 95.051(d) provides that the running of time under any statute of limitations is tolled by "[t]he **adjudicated incapacity**, *__before__* the cause of action accrued, of the person entitled to sue." Fla. Stat. §  95.051. (Emphasis added).

In this case, any mental incapacity that Evans had or has[4], including PTSD, must have been formally adjudicated to qualify for tolling, and even then, "the action must [have] begun within 7 years after the act, event, or occurrence giving rise to the cause of action." Fla. Stat. §  95.051(i).

---

[4] In fact, Evans' history of litigation evidences that the contrary is true—Evans has the capacity to carry out extensive *pro se* litigation matters. In fact, he has seven other lawsuits pending in this very district. *See* Dec. K. Moxon at ¶ 6.

The Complaint **does not allege any adjudicated incapacity** and confirms that the events occurred **more than seven years before** his filing. Even if he had been adjudicated insane, mentally ill or incapacitated, it would still be many years past the deadline for filing. In sum, his tolling legal conclusions are completely without merit.[5]

### B.    Even if the Claims Were Not Time-Barred, This Court Lacks Personal Jurisdiction Over CSI

On a Motion to Dismiss for lack of personal jurisdiction, the Court may look beyond the four corners of the complaint and consider materials outside the pleadings, including accompanying affidavits, declarations, and other written materials. Further, the exercise of personal jurisdiction must be appropriate under both (1) the Florida long-arm statute and (2) the Due Process Clause. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203 (11th Cir. 2015). As addressed below, neither general nor specific personal jurisdiction lies in this case as to CSI.

### 1.    *CSI is Not Subject to General Jurisdiction in Florida*

For general jurisdictional purposes, Florida's long-arm statute "extends to the limits on personal jurisdiction imposed by the Due Process Clause," and therefore, the Court need only determine if the Due Process Clause permits the exercise of general jurisdiction. *Carmouche*, 789 F.3d at 1204. Under the Due Process Clause, a foreign corporation may only be subjected to general jurisdiction "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1317 (11th Cir. 2018). "The 'paradigm all-purpose forums' in which a corporation is at home are the corporation's place of incorporation and its principal place of business." *Id.* at 1317 (citing

---

[5] For additional support confirming that Plaintiff's claims are time-barred, Defendant Sky Dayton's Motion to Dismiss [DE 25] provides ample legal citations confirming that dismissal of Plaintiff's claims is warranted given the statute of limitations and statute of repose.

*Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). Only in an "exceptional case" will a corporation's operations in a forum other than its place of incorporation or its principal place of business be so substantial as to render it at home in that forum. *Daimler*, 571 U.S. at 761, n.19. This requires the "activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business," *Carmouche*, 789 F.3d at 1205, such that the foreign corporation is "'comparable to a domestic enterprise in [Florida].'" *Erwin v. Ford Motor Co.*, 2016 WL 7655398, at *11 (quoting *Daimler*, 134 S.Ct. at 758, n.11). "'[S]ubstantial, continuous, and systematic' business is insufficient to make a company 'at home'" and subject to general jurisdiction. *Waite*, 901 F.3d at 1318.

CSI is incorporated in California with its principal place of business in California. It is **not** "at home" in Florida. CSI does not have any substantial, continuous, or systematic business operations in Florida. Dec. L. Farny at ¶ 9–12. In fact, nowhere in the Complaint does Plaintiff allege that CSI had substantial contacts with the State of Florida. Indeed, the "Jurisdiction and Venue" section of the Complaint *does not mention CSI at all*. Furthermore, Plaintiff attempts to allege personal jurisdiction based on allegations that "Defendants' intentional torts were directed to Plaintiff, a Florida resident." But the **only** facts alleged in support of the claim that CSI committed intentional torts are allegations that "the Scientology Defendants" sent him "letters and emails, recruiting materials and invitations to return." Complaint at 10. Indeed, Plaintiff does not allege specifically who, how, or when CSI (or its agents) communicated with him. Rather, Plaintiff's allegations are mere generalizations regarding the conduct of the "Scientology Defendants" without providing specific facts as to what conduct was carried out by CSI specifically. Indeed, such generalized claims are nothing more than shotgun pleadings, which are expressly prohibited by the Eleventh Circuit. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792

F.3d 1313, 1320–21 (11th Cir. 2015) (Complaints "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions" are labeled "shotgun pleadings.").

### 2.    *CSI is Not Subject to Specific Jurisdiction in This Case*

The exercise of specific jurisdiction must satisfy the requirements of *both* Florida's long-arm statute and the Due Process Clause. Here, the exercise of specific jurisdiction over CSI would not comport with either.

### a.    **CSI is Not Subject to Specific Jurisdiction Under Florida's Long-Arm Statute**

To establish specific jurisdiction under Florida's long-arm statute, a plaintiff must allege facts establishing that (1) a defendant did one of the nine enumerated acts in the statute within Florida[6] and (2) the cause of action "arose from" that enumerated act. *Iglesias v. Pernod Ricard*, No. 20-cv-20157-KMW, 2020 WL 13367465, at *7 (S.D. Fla. Aug. 17, 2020); *Hinkle v. Cirrus Design Corp.*, 775 Fed.Appx. 545, 547–48 (11th Cir. 2019); Fla. Stat. § 48.193(1)(a)(1).

### b.    **CSI is Not Subject to Jurisdiction Under Fla. Stat. § 48.193(1)(a)(1)**

A foreign defendant may be subject to specific jurisdiction for any claim *arising from* the defendant "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." Fla. Stat. § 48.193(1)(a)(1). Plaintiff does not and cannot allege facts supporting specific jurisdiction because CSI conducts no business in Florida, is not registered to do business in Florida, and has no office, officers, employees,

---

[6] Pursuant to Fla. Stat. § 48.193, the only "enumerated acts" that could be remotely applicable based on the allegations set forth in the Complaint are: "(1) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state;" and "(2) Committing a tortious act within this state." As discussed herein, the Plaintiff has failed to show that CSI's conduct falls within ***any*** of these enumerated acts.

representatives, or agents in Florida. Dec. L. Farny at ¶¶ 9–12); *see Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (listing relevant factors).

Plaintiff's allegations fail to establish specific jurisdiction because his causes of action do not arise from CSI's alleged activities in Florida. *Melgarejo v. Pycsa Panama, S.A.*, 537 F. Appx 852, 861 (11th Cir. 2013). The alleged acts by CSI subject to complaint are "sending letters and emails, recruiting materials, and invitations to return, often approximately monthly." However, those allegations are not even sufficiently pled as it relates to conduct carried out by CSI specifically.

The Court must construe Evans' jurisdictional allegations in the complaint as true ***only if*** they are ***uncontroverted*** by Defendant's evidence in support of its Motion to Dismiss. Fed. R. Civ. P. 44(b) explicitly authorizes the use of custodian affidavits to prove the nonexistence of records. The rule states that "[a] written statement that a diligent search of designated records revealed no record or entry of a specified tenor is admissible as evidence that the records contain no such record or entry." CSI has submitted a controverting affidavit. CSI's custodian of records has searched its records and has found no record of any written or oral communication between Evans and CSI. Dec. L. Farny at ¶ 14.

And notably, in response to Defendant Dayton's Motion to Dismiss, Plaintiff attached a letter and email purporting to prove some connection between Mr. Dayton, himself and CSI. But the email and letter, on their face, are clearly **not** from CSI. Plaintiff's Exhibit A is a letter from a Scott Weigand from the Church of Scientology Celebrity Centre International. This is **not** CSI as CSI is a separate and independent corporation.[7]

---

[7] A cursory review of the Plaintiff's Exhibit A letter indicates that Plaintiff himself solicited information and material from Church of Scientology Celebrity Centre International, requesting it perform the same acts he now claims were tortious and caused him alleged emotional distress.

In short, the claims are without merit.

### c.   CSI is Not Subject to Jurisdiction Under Fla. § 48.193(1)(a)(2)

A foreign defendant may be subject to specific jurisdiction for a claim **arising from** the defendant "[c]ommitting a tortious act within this state." Fla. Stat. § 48.193(1)(a)(2). For personal jurisdiction to attach under § 48.193(1)(a)(2), a plaintiff must plead facts showing the defendant committed a "substantial aspect of the alleged tort in Florida." *Musiker v. Projectavision, Inc.*, 960 F. Supp. 292, 296 (S.D. Fla. 1997); *Freedom Sav. & Loan Ass'n v. Ormandy & Assocs.*, 479 So.2d 316, 317 (Fla. 5th DCA 1985).

But Plaintiff has not alleged any conduct **by CSI** in Florida that could constitute "a tortious act within this state" from which his claims arise. Rather, Plaintiff's only allegations regarding the mailing of letters and some emails to him, are insufficiently pled as the Complaint does not allege that any **CSI** officer, director, staff member, or employee engaged in any conduct against Plaintiff—in Florida or otherwise. Regardless, the alleged tortious conduct never occurred based on the uncontroverted declaration of CSI's records custodian. Dec. L. Farny at ¶ 14 (no letters or communications were sent by CSI to Evans). And even if CSI engaged in such conduct, such acts are not tortious in any event as such conduct is constitutionally protected as discussed further below. *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993) ("A prohibition on the use of the mails is a significant restriction of First Amendment rights."); *see infra* § III.C.

Accordingly, CSI is not subject to specific jurisdiction under the long-arm statute.

---

And, importantly, as stated in the Declaration of Farny, "[e]ach local Church of Scientology is **separately** incorporated as a religious nonprofit corporation and is operated by its own officers and directors." Dec. L. Farny at ¶ 8. Therefore, any communication from Church of Scientology Celebrity Centre International, a separate and distinct legal entity to CSI, has no bearing on this Court's determination of personal jurisdiction.

### 3.     The Due Process Clause Prohibits the Exercise of Specific Jurisdiction Over CSI in This Case

In addition to failing to satisfy the Florida's long-arm statute, specific jurisdiction over CSI separately fails because the Due Process Clause prohibits it. To exercise specific personal jurisdiction, due process requires the Court to determine: (1) the plaintiff's claims arise out of or relate to the defendant's contacts with the forum; (2) the nonresident defendant purposefully availed itself of the privilege of conducting activities within the forum state; **and** (3) the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (quotes omitted). All three requirements must be satisfied.

As to the first element, "a claim arises out of or relates to the defendant's contact with the forum state if the contact is a 'but-for cause' of the claim, and the claim is a 'foreseeable consequence' of the contact." *Erwin*, 2016 WL 7655398, at *7; *Waite*, 901 F.3d at 1315. CSI's alleged contacts have **no connection** to Plaintiff's claims in Florida.

The second requirement turns on whether the defendant purposefully availed itself "of the privilege of conducting activities within the forum State" by deliberately establishing contacts and directing its activities toward the forum. *Ascend Performance Materials Operations, LLC v. Concepts, NREC, LLC*, No. 3:18-cv-243-MCR-CJK, 2019 WL 13159877, at *4 (N.D. Fla. Feb. 21, 2019); *see Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) (receipt of licensing revenue from an entity in the forum state is not enough to establish minimum contacts with that state). CSI does **not** conduct **any** business in Florida. Dec. L. Farny at ¶¶ 9–12. The Court need not address the third element because Plaintiff cannot satisfy the first two. *Louis Vuitton*, 736 F.3d at 1355.

The disingenuous allegations in the Complaint do not concern CSI whatsoever. Lacking

personal jurisdiction, the Complaint should be dismissed *with prejudice*.

**C.** **Even if the Court Had Personal Jurisdiction Over CSI, Plaintiff Fails to State a Claim for Intrusion upon Seclusion**

"To survive a motion to dismiss [Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). Here, even when construing the Complaint in the light most favorable to Plaintiff and taking his factual allegations as true—that Plaintiff received unsolicited mail from CSI over the course of years—his claim for intrusion upon seclusion must be dismissed. Not only does Plaintiff fail to state a plausible claim for intrusion upon seclusion, but CSI's alleged activity as described by Plaintiff is protected by the First Amendment.

Florida law recognizes three categories of privacy torts: (1) appropriation, (2) intrusion, and (3) public disclosure of private facts. *Oppenheim v. I.C. Sys., Inc.*, 695 F. Supp. 2d 1303, 1308 (M.D. Fla.), *aff'd*. 627 F.3d 833 (11th Cir. 2010). The tort of intrusion upon seclusion "deals with an intrusion into a place in which there is a reasonable expectation of privacy. . . . In other words, an invasion of privacy by intrusion requires physically or electronically intruding into one's private quarters. . . . The intrusion must also be one that would be **highly offensive** to a **reasonable person**." *Pet Supermarket, Inc. v. Eldridge*, 360 So.3d 1201, 1206–07 (Fla. 3d DCA 2023) (quotation marks and citations omitted) (emphasis added). The "highly offensive" intrusion must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Stoddard v. Wohlfahrt*, 573 So.2d 1060, 1062-63 (Fla. 5th DCA 1991).

Sending mail to a publicly accessible mailbox or PO box does **not** intrude into private quarters. Receiving an unsolicited letter at home is **not** considered "highly offensive" to a reasonable person in the manner required to satisfy the tort. *In re Municipal Parking Services, Inc.*

*DPPA Litigation*, No. 3:24CV320-TKW-HTC, 2025 WL 1475794, at *4, FN 2 (N.D. Fla. Feb. 12, 2025); *see also Pucillo v. National Credit Systems, Inc.,* 66 F.4th 634, 640 (7th Cir. 2023) (indicating mail delivery is a routine, non-intrusive form of communication that does not rise to the level of a privacy tort); *Spencer v. Honorable Justs. of Supreme Ct. of Pa.*, 579 F. Supp. 880, 890 (E.D. Pa. 1984), *aff'd sub nom. Spencer v. Supreme Ct. of Pa.*, 760 F.2d 261 (3d Cir. 1985) (in ruling there is **no protected privacy interest in receiving unsolicited mail**, the court noted, "the **recipients of direct mail can avoid any affront to their sensitivities by simply throwing the letters in the trash** can.") (emphasis added).

Sending unsolicited mail through the U.S. Postal Service does not impair any expectation of privacy and is not highly offensive to reasonable persons. Indeed, most of all physical mail delivered to U.S. households is considered unsolicited (sometimes referred to as "junk mail."). If Plaintiff's theory of the case was accepted, then every household in the country would have an invasion of privacy cause of action for every unsolicited piece of physical mail that is received. In sum, Plaintiff did not, and cannot, sufficiently plead the elements of intrusion upon seclusion because receiving unsolicited physical mail through the U.S. Postal Service neither violates any expectation of privacy nor is highly offensive to reasonable persons as a matter of law. *In re Municipal Parking Services, Inc. DPPA Litigation*, 2025 WL 1475794, at *4. And, nevertheless, mail is one medium of free speech, and thus the right to send and receive mail is protected by the First Amendment. *City of Cincinnati*, 507 U.S. at 427 ("A prohibition on the use of the mails is a significant restriction of First Amendment rights.").

**D.** **Plaintiff's Alleged Claim of "Unjust Enrichment" is Not Supported by Any Allegation of Fact Against CSI**

Assuming jurisdiction exists (it does not), Plaintiff only ***conclusively*** alleges in Count II that he "conferred substantial benefits upon **Defendants**, including money, housing, food, and

personal support." Complaint at 12 (emphasis added). However, Plaintiff alleges **no facts** regarding how or when such "benefits" were conferred on CSI. Indeed, the opposite is alleged in the Complaint as Plaintiff alleges that circa 1991, Plaintiff considered and *rejected* any relationship with the Scientology religion and such status never changed. Complaint at 9–10.

Plaintiff has failed to allege a single fact to support his legal conclusion that CSI was "unjustly enriched." As such, Plaintiff's claim should be dismissed. *Kendrick v. Eagle Int'l Grp., LLC,* No. 08–80909–CIV, 2009 WL 3855227, at *3 (S.D. Fla. Nov. 17, 2009) (dismissing complaint where plaintiff "failed to allege a single fact to support her legal conclusion").

### E.   No Allegations Support Plaintiff's Claim for "Conversion" Against CSI

The Complaint alleges that circa 1991, Plaintiff gave a Mickey Mantle baseball card to Sky Dayton's associate, "Sean," and that "Defendants" thereafter exercised dominion and control over the property by allegedly failing to return it. Complaint at 13. This cannot possibly state a claim against either defendant, and certainly not CSI. Indeed, this claim is another example of a prohibited shotgun pleading. *See Weiland*, 792 F.3d at 1320–21. Here, Plaintiff fails to allege any fact which asserts how, when, *or even if* CSI *itself* obtained the baseball card. As stated previously, conclusory allegations in a Complaint should be disregarded when a court decides a Motion to Dismiss under Rule 12(b)(6). *Bell Atlantic v. Twombly*, 550 U.S. 544, 561 (2007). Furthermore, the alleged "conversion" occurred in 1991 and, pursuant to Florida's four-year statute of limitations, his claim has long since expired. Fla. Stat. § 95.11.

### F.   Alternatively, the Case Should Be Dismissed for Failure to Serve the Summons and Complaint, in Violation of Rule 12(b)(5)

CSI is a California religious corporation located at 6331 Hollywood Blvd., Los Angeles, California. Pursuant to California Code of Civil Procedure § 416.10, a summons and complaint may be served on a corporation by delivering copies "(a) To the person designated as agent for

service of process" or "(b) to [an executive officer] or a person authorized by the corporation to receive service of process." A proof of service was filed by Plaintiff on January 29, 2026, representing that Plaintiff's process server "served the summons on Barrister Executives, who is designated by law to accept service of process on behalf of Church of Scientology International."

This is not true. Attorney Jeanne Reynolds, *not* "Barrister Executives," is CSI's designated agent for service of process. *See* Dec. K. Moxon at Exhibit "2."[8] As Jeanne Reynolds has not been served, the proof of service Plaintiff filed with the Court is legally ineffective. Plaintiff was informed of this fact and requested to withdraw the false proof of service. He refused, necessitating CSI's motion for additional time to file a responsive pleading. Dec. K. Moxon at ¶ 4.

As there has been no lawful service of the Summons and Complaint on CSI, the action should be dismissed as to CSI.

**CONCLUSION**

Each of the manufactured claims lack legal merit and are insufficiently pled. The Court has no personal jurisdiction over CSI, all claims are barred by the statute of limitations and statute of repose, and Plaintiff's claims are wrought with conclusory allegations that fail to assert a claim upon which relief can be granted. As such, CSI respectfully moves that the action be dismissed in its entirety, with prejudice.

Dated: March 4, 2026

**DICKINSON WRIGHT PLLC**
*Attorneys for Defendant, Church of*
*Scientology International*
350 East Las Olas Boulevard, Suite 1750
Fort Lauderdale, Florida 33301
Phone: 954-991-5420
Fax: 844-670-6009

---

[8] The Court may take judicial notice of the California Secretary of State corporation information page for Church of Scientology International listing Ms. Reynolds as the registered agent for service of process. *See* Dec. K. Moxon at Exhibit "2."

16

*/s/ Alan J. Perlman*
Alan J. Perlman, Esq.
Florida Bar No. 826006
E-mail: aperlman@dickinson-wright.com

Jennifer J. Vaquerano, Esq.
Florida Bar No. 1039694
E-mail: jvaquerano@dickinson-wright.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 4, 2026, a true and correct copy of the foregoing was served upon all parties who are currently on the list to receive email notice/service for this case via the Court's CM/ECF System and/or U.S. mail to the parties listed below.

By:     */s/ Alan J. Perman*
        Alan J. Perlman, Esq.