

Exhibit 2

**null**
**Transmittal Number: 33253098**

# Rejection of Service of Process

**Return to Sender Information:**

Brian Evans null
Pro Se
2080 S. Ocean Drive
Ste. 1505
Hallandale Beach, FL 33009

| | |
|---|---|
| **Date:** | 02/05/2026 |
| **Party Served:** | Sky Dayton c/o Age of Learning, Inc. |
| **Jurisdiction Served:** | DE |
| **Method Served:** | Personal Service |
| **Title of Action:** | Brian Evans vs. Church of Scientology International |
| **Case/Reference No:** | 1:26-CV-20389 |

The service of process received for the party served, as listed above, cannot be forwarded to the intended party for one of the reasons listed below:

- **Agent -** According to our records and the records at the Secretary of State, or other appropriate state agency, we are not the registered agent for the company you are trying to serve or the status of the entity is no longer active.
- **Name -** Because two or more companies can have very similar names, the name of the company to which service of process is directed MUST BE IDENTICAL to the company name on file with the Secretary of State or other appropriate state agency.
- **Resignation -** CSC has resigned as the registered agent for the company being served.

Or the entity served is inactive at the state for one of the reasons listed below:

- **Withdrawn**
- **Surrendered**
- **Merged Out of Existence**
- **Dissolved**
- **Revoked**

It is your responsibility to verify this information with the Secretary of State or other appropriate state agency.

Our customer records are confidential. We do not release any information related to our customers, agent representation or service of process received. Please contact the Secretary of State or other appropriate agency for more information.

For an electronic copy of the identified service of process, send your request by e-mail to sop@cscglobal.com. Please include the transmittal number located in the upper right-hand corner of this letter.

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

Southern District of Florida

| | |
|---|---|
| BRIAN EVANS <br><br> *Plaintiff(s)* <br> v. <br><br> CHURCH OF SCIENTOLOGY INTERNATIONAL, <br> SKY DAYTON, an Individual <br><br> *Defendant(s)* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. <br> ) <br> ) <br> )       26-CV-20389 <br> ) <br> ) <br> ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Sky Dayton, individually
c/o Age of Learning, Inc.
101 N. Brand Blvd. Suite 700
Glendale, CA 91203

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Brian Evans
2080 S. Ocean Drive
Ste. 1505
Hallandale Beach, FL 33009
Email: belasvegas@yahoo.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**SUMMONS**

Date: Jan 22, 2026

*s/ Dimas Rodriguez*

Deputy Clerk
U.S. District Courts

Angela E. Noble
Clerk of Court

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION



FILED BY _____ D.C.

JAN 21 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

BRIAN EVANS,

Plaintiff, pro se,

v.

CHURCH OF SCIENTOLOGY INTERNATIONAL;

SKY DAYTON, an individual

DOES 1-10,

Defendants.

CASE NUMBER:_____

JURY TRIAL DEMANDED

COMPLAINT

PRELIMINARY STATEMENT

This action arises from a course of fraudulent inducement, religious coercion, retaliatory

exclusion, unjust enrichment, conversion of personal property, and intentional infliction of

emotional distress perpetrated by Defendants after Plaintiff refused to join the Church of

Scientology. The gravamen of this case is not religion itself, but the use of religious recruitment,

tied to financial incentives, as a mechanism to condition economic opportunity, extract value,

and retaliate against Plaintiff when he refused to comply.

1

Between approximately 1989 and 1991, Plaintiff maintained a close personal, residential, and financial relationship with Defendant Sky Dayton during the formative period preceding the creation of EarthLink. During this time, Dayton expressly represented to Plaintiff that Plaintiff would be involved in, and would benefit from, the business venture that later became EarthLink. These representations were made repeatedly, were specific in nature, and were intended to induce Plaintiff to provide material support at a time when Dayton lacked financial stability and business infrastructure.

In reasonable reliance on these representations, Plaintiff lent Dayton money, provided housing, food, and daily living support, and extended personal and familial trust well beyond an arm's-length relationship. Plaintiff's mother personally cooked meals for Dayton while he resided in Plaintiff's home, evidencing the depth of reliance and trust. Plaintiff also extended trust to Dayton's associates, including permitting one associate to take possession of a highly valuable personal collectible belonging to Plaintiff.

Plaintiff does not allege that he could foresee, predict, or quantify the later success of EarthLink or any subsequent ventures. Rather, Plaintiff alleges that EarthLink became the factual and economic foundation of Dayton's later professional success, access to capital, and ability to launch or control additional enterprises, and that Plaintiff was excluded from all participation or benefit flowing from that foundation solely because he refused to join Scientology.

During the period in which Plaintiff was providing financial and personal support, Defendant Dayton actively attempted to recruit Plaintiff into the Church of Scientology. Plaintiff subsequently learned, and Defendant Dayton confirmed, that Dayton would receive a commission or other financial benefit if Plaintiff joined Scientology. Plaintiff expressly

2

communicated to Dayton that he was not comfortable with, and objected to, any religious recruitment tied to personal financial gain. Immediately after Plaintiff made clear that he would not join Scientology under those circumstances, Dayton ceased communication with Plaintiff, withdrew all promised involvement in EarthLink, refused to discuss repayment of money lent, refused to address the return of Plaintiff's personal property, and ignored Plaintiff entirely. The coercion was thus not theoretical or implied; Plaintiff's exclusion occurred as a direct and immediate consequence of his refusal to join Scientology after objecting to Dayton's commission-based incentive.

After Plaintiff's exclusion, Defendants denied wrongdoing, concealed material facts, and retained Plaintiff's money and property while EarthLink and related ventures became extraordinarily successful and conducted extensive business nationwide, including substantial and continuous business in Florida. Plaintiff suffered economic loss, deprivation of property, and severe emotional distress, all of which were felt in Florida.

Plaintiff's allegations are based on personal knowledge and are supported by documentary evidence in Plaintiff's possession, including communications and records substantiating Dayton's Scientology recruitment efforts, Dayton's statements regarding commission-based incentives tied to recruitment, the promises made regarding EarthLink, and the immediate retaliatory change in conduct once Plaintiff refused to join Scientology. Plaintiff will produce such evidence in discovery.

At the pleading stage, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiff's favor. Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009). A complaint need only allege sufficient factual matter to

3

state a claim that is plausible on its face; it need not prove the case or resolve factual disputes. Id. Moreover, a claim does not accrue until the plaintiff discovers, or with reasonable diligence should have discovered, not merely the injury, but the facts constituting the violation, including the causal connection between the conduct and the harm. Merck & Co. v. Reynolds, 559 U.S. 633 (2010). Here, Plaintiff alleges late discovery not merely of injury, but of the retaliatory and coercive scheme itself and the causal role of Defendants' conduct, first corroborated by documentary evidence in November 2025, rendering dismissal at the pleading stage improper.

## FACTUAL ALLEGATIONS REGARDING THE SCIENTOLOGY DEFENDANTS

Defendant Church of Scientology International and DOES 11–20 (collectively, the "Scientology Defendants") engaged in a decades-long course of harassment, coercive pursuit, and retaliation directed at Plaintiff after Plaintiff refused to join the Church of Scientology.

As alleged above, Defendant Sky Dayton introduced Plaintiff to Scientology and attempted to recruit Plaintiff while simultaneously inducing Plaintiff to provide money, housing, food, and personal support. Plaintiff later learned, and Dayton confirmed, that Dayton stood to receive a commission or other tangible benefit if Plaintiff joined Scientology.

After Plaintiff refused to join Scientology—particularly after objecting to recruitment tied to a commission-based incentive—Plaintiff experienced persistent unwanted contacts and communications associated with Scientology, which have continued for more than thirty (30) years and continue to the present.

Plaintiff left the United States for an extended period and, upon returning, discovered that Scientology had obtained and used Plaintiff's new address despite Plaintiff not knowingly

4

providing that address to Scientology. This conduct is consistent with targeted tracking and surveillance-like pursuit, not ordinary or incidental outreach.

These acts were directed at Plaintiff, a Florida resident, and the resulting harms—including fear, anxiety, disruption of daily life, and severe emotional distress—were felt primarily in Florida.

The Scientology Defendants' conduct is alleged as conduct and intentional tortious acts—not as a challenge to any religious belief—and is actionable to the extent it constitutes harassment, coercive pursuit, intrusion, and intentional infliction of emotional distress. See, e.g., Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520 (1993) (distinguishing protected belief from regulation of conduct); see also Snyder v. Phelps, 562 U.S. 443 (2011) (First Amendment context is fact-sensitive and does not immunize otherwise actionable tortious conduct in all settings).

## JURISDICTION AND VENUE

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000 exclusive of interest and costs.

Plaintiff Brian Evans is a citizen of the State of Florida.

Defendant Sky Dayton is a citizen of the State of California.

Defendant EarthLink, Inc. is a corporation incorporated under the laws of a state other than Florida and maintains its principal place of business outside the State of Florida.

Accordingly, complete diversity exists between Plaintiff and all Defendants.

Sky Dayton, as founder, controlling executive, and primary decision-maker of EarthLink and ventures arising from EarthLink's success, purposefully directed and benefitted from nationwide commercial activity, including substantial business conducted in Florida. A corporate officer who is a primary participant in tortious conduct is subject to personal jurisdiction wherever the corporation does business and the officer's intentional acts cause injury. Calder v. Jones, 465 U.S. 783 (1984). (U.S. Supreme Court)

Jurisdiction is independently proper under the effects test because Defendants' intentional torts were directed at Plaintiff, a Florida resident, and caused harm primarily felt in Florida. Licciardello v. Lovelady, 544 F.3d 1280 (11th Cir. 2008). (11th Cir.)

Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this District and the economic, financial, and emotional injuries giving rise to this action were sustained in this District.

## STATUTE OF LIMITATIONS, FRAUDULENT CONCEALMENT, DELAYED DISCOVERY, AND EQUITABLE TOLLING

Dismissal on statute-of-limitations grounds is improper unless untimeliness is apparent on the face of the complaint and no plausible tolling facts are alleged. La Grasta v. First Union Sec., Inc., 358 F.3d 840 (11th Cir. 2004).

Defendants fraudulently concealed Plaintiff's causes of action by severing communication, denying wrongdoing, retaining Plaintiff's money and property, and concealing the true religiously retaliatory motive underlying Plaintiff's exclusion. Fraudulent concealment tolls statutes of limitation under Florida law. Major League Baseball v. Morsani, 790 So. 2d 1071 (Fla. 2001).

A cause of action accrues when a plaintiff knew or reasonably should have known of the injury and its causal connection to the defendant's conduct. Raie v. Cheminova, Inc., 336 F.3d 1278 (11th Cir. 2003). Plaintiff could not reasonably understand the causal nexus between religious coercion, fraudulent inducement, and economic harm until much later.

Equitable tolling applies where extraordinary circumstances prevent timely filing and where the plaintiff has acted with reasonable diligence. Machules v. Dep't of Admin., 523 So. 2d 1132 (Fla. 1988). Retaliatory exclusion tied to religious recruitment incentives and decades-long concealment constitute extraordinary circumstances.

Plaintiff further alleges that, in July 2025, Plaintiff was diagnosed with post-traumatic stress disorder ("PTSD"). The PTSD diagnosis and its effects are relevant to tolling and delayed discovery because the condition materially impaired Plaintiff's ability to process, pursue, and timely act on the full causal nexus between Defendants' conduct (including religiously motivated coercion and retaliatory exclusion) and Plaintiff's injuries, particularly in light of Defendants' concealment and severance of communication.

Florida law recognizes that the statutory tolling list in § 95.051 is "exclusive" for statutory tolling, but that equitable doctrines such as equitable estoppel and related equitable principles may still apply in appropriate circumstances to prevent inequitable reliance on a limitations defense. Major League Baseball v. Morsani, 790 So. 2d 1071 (Fla. 2001); Fla. Stat. § 95.051.

Equitable tolling applies where the plaintiff has been misled or lulled into inaction, or where extraordinary circumstances prevented timely filing despite reasonable diligence. Machules v. Dep't of Admin., 523 So. 2d 1132 (Fla. 1988). Here, the combination of Defendants' concealment and retaliatory severance, the decades-long informational asymmetry regarding

7

Defendants' motive and incentives, and Plaintiff's PTSD diagnosis and resulting impairment constitute extraordinary circumstances supporting equitable tolling and delayed discovery at the pleading stage.

In addition, Florida recognizes delayed discovery principles in trauma-related contexts where a plaintiff could not reasonably know or process the injury and its causal connection until later. Hearndon v. Graham, 767 So. 2d 1179 (Fla. 2000). Plaintiff pleads these facts to show that limitations issues present factual questions not suitable for resolution on a motion to dismiss. Kendall Lakes Towers Condo. Ass'n v. Pac. Ins. Co., 913 F.3d 1173 (11th Cir. 2019).

Where tolling and delayed discovery are plausibly pled, statute-of-limitations issues present factual questions not suitable for resolution on a motion to dismiss. Kendall Lakes Towers Condo. Ass'n v. Pac. Ins. Co., 913 F.3d 1173 (11th Cir. 2019). Plaintiff first received documentary confirmation tying Dayton to Scientology recruitment in November 2025.

That is when Plaintiff first reasonably discovered the causal connection between the recruitment, the retaliation, the loss of property, and the exclusion from economic opportunity.

Plaintiff filed this action promptly thereafter.

Where a plaintiff could not reasonably have discovered the causal connection earlier, delayed discovery and equitable tolling apply. See Hearndon v. Graham, 767 So. 2d 1179 (Fla. 2000); Kendall Lakes Towers Condo. Ass'n v. Pac. Ins. Co., 913 F.3d 1173 (11th Cir. 2019); Holland v. Florida, 560 U.S. 631 (2010).

SUPPLEMENTAL FACTUAL ALLEGATIONS AND CLARIFICATIONS REGARDING TIMELINE, CONVERSION, SCIENTOLOGY CONTACT, AND DELAYED DISCOVERY

Between approximately 1990 and 1991, Plaintiff provided Defendant Sky Dayton and persons in his circle with financial and personal support, including approximately $3,000 in money and substantial non-monetary support, in reasonable reliance on representations that Plaintiff would be involved in and benefit from the business venture that later became EarthLink.

During this same period, Plaintiff owned a highly valuable collectible: a 1952 Topps Mickey Mantle rookie card in mint condition.

In or around 1991, Plaintiff was asked to allow a friend and associate of Sky Dayton named "Sean" to temporarily take possession of the card for a limited purpose (to show it to family). Plaintiff expressly asked Sky Dayton if this was acceptable. Dayton approved and expressly told Plaintiff that he would "take responsibility" and that Plaintiff would get the card back.

The card was never returned.

At or around the same time period, Dayton was actively taking Plaintiff to the Church of Scientology and attempting to recruit Plaintiff.

Plaintiff ultimately refused to join Scientology, including because Plaintiff learned and objected to the fact that Dayton stood to receive a commission or other benefit for successful recruitment.

Immediately after Plaintiff refused to join Scientology, Dayton abruptly cut off contact with Plaintiff, excluded Plaintiff from all projects and opportunities, ceased all communication, did not return the Mickey Mantle card, and did not repay the money Plaintiff had provided.

For many years thereafter, Plaintiff understood only that he had been wronged or cut off, but did not understand or appreciate the true causal connection between the Scientology recruitment effort, Dayton's incentive structure, and the retaliatory cutoff and loss of property.

9

Beginning in or around 2020 and continuing through 2024, Plaintiff made multiple attempts to contact Sky Dayton and request return of the Mickey Mantle card, including in or about 2020, 2021, 2022, 2023, and 2024. Dayton did not respond at all. This failure and refusal to return the card after demand constitutes continuing and renewed acts of conversion.

Meanwhile, for approximately thirty (30) years, the Scientology Defendants have engaged in a persistent course of conduct directed at Plaintiff, including sending letters and emails, recruiting materials, and invitations to return, often approximately monthly.

Plaintiff has moved multiple times, including leaving the country for a period and later returning. Plaintiff did not provide his new addresses to Scientology, yet the Scientology Defendants repeatedly located and contacted him anyway.

In 2024, Plaintiff explicitly wrote to Scientology and informed them that he is a Christian and not interested in Scientology and did not wish to be contacted. Scientology acknowledged this communication but nevertheless continued sending materials, books, and recruitment invitations.

In November 2025, Plaintiff received emails from Scientology that, for the first time, explicitly stated in writing that "Sky" (Sky Dayton) was the person who brought Plaintiff to Scientology and that Sky was bringing or recruiting other people as well.

These November 2025 emails constituted the first time Plaintiff had documentary confirmation tying Dayton to Scientology recruitment and to Plaintiff's own recruitment.

Upon receiving and reviewing these communications in November 2025, the full causal connection first became clear to Plaintiff: that the Scientology recruitment effort, Plaintiff's

refusal, the immediate cutoff by Dayton, the loss of the Mickey Mantle card, and Plaintiff's exclusion from all opportunities were all part of the same retaliatory and coercive scheme.

This realization caused Plaintiff significant emotional distress, including anxiety, worsening PTSD symptoms, sleep disruption, and psychological distress.

The Scientology Defendants have continued contacting Plaintiff even after this point, including sending a letter to Plaintiff in or about January 2026, only days before the filing of this action.

The Scientology communications are not generic or mass mailings. They are personalized, use Plaintiff's name, refer to Plaintiff's past visit, and refer to Sky Dayton by name.

These facts establish continuing torts, delayed discovery, fraudulent concealment, and equitable tolling, and further establish modern, timely acts of conversion, intrusion upon seclusion, and intentional infliction of emotional distress.

CAUSES OF ACTION

COUNT I – FRAUDULENT INDUCEMENT

Defendant Sky Dayton knowingly made material representations that Plaintiff would be involved in and benefit from EarthLink in order to induce Plaintiff to provide money, housing, food, and personal support.

These representations were false at the time they were made because Dayton never intended to perform them unless Plaintiff complied with religious recruitment demands.

Dayton knew the representations were false and made them with the intent that Plaintiff rely upon them.

11

Plaintiff reasonably relied on these representations by providing substantial financial and personal support during a critical period.

The temporal proximity between Plaintiff's objection to Dayton's commission-based religious recruitment and Plaintiff's immediate exclusion further supports the inference that the promises were made without intent to perform and were contingent upon religious compliance.

False promises made without intent to perform constitute actionable fraud. Butler v. Yusem, 44 So. 3d 102 (Fla. 2010).

Plaintiff suffered damages as a direct and proximate result of this fraudulent inducement.

## COUNT II – UNJUST ENRICHMENT

Plaintiff conferred substantial benefits upon Defendants, including money, housing, food, and personal support.

Defendants knowingly accepted and retained these benefits under circumstances that reasonably expected compensation or equitable treatment.

Plaintiff did not receive repayment, compensation, or the promised involvement that formed the basis of the benefit conferred.

Retention of these benefits without compensation is unjust and inequitable.

Unjust enrichment applies where it would be inequitable for a defendant to retain a benefit without paying fair value. Commerce P'ship 8098 Ltd. v. Equity Contracting Co., 695 So. 2d 383 (Fla. 4th DCA 1997).

## COUNT III – CONVERSION

12

Plaintiff owned a highly valuable personal collectible card.

Defendants' associate took possession of the property with Plaintiff's consent for a limited purpose. Defendants thereafter exercised wrongful dominion and control over the property by failing to return it upon demand. Conversion occurs when property is wrongfully retained or dominion is exercised inconsistent with the owner's rights. Burlesci v. Peters, 68 Cal. App. 4th 1062 (1998). Plaintiff suffered damages as a result of the conversion. The Mickey Mantle card at issue is a 1952 Topps Mickey Mantle rookie card in mint condition. The card was entrusted to "Sean," an associate of Sky Dayton, with Dayton's express approval and Dayton's express assurance that he would take responsibility for its return.

Plaintiff made repeated demands for the return of the card in or about 2020, 2021, 2022, 2023, and 2024. Defendants failed and refused to return it. Under Florida law, conversion occurs not only at the time of wrongful taking, but also where a defendant wrongfully retains property or refuses to return it upon demand. See Senfeld v. Bank of Nova Scotia Tr. Co. (Cayman) Ltd., 450 So. 2d 1157, 1160–61 (Fla. 3d DCA 1984).

Each refusal or failure to return the property after demand constitutes a new and continuing act of conversion.

COUNT IV – COERCION AND UNDUE INFLUENCE

Defendant Dayton conditioned Plaintiff's promised involvement in EarthLink and fair treatment on Plaintiff's participation in Scientology.

Plaintiff's refusal to join Scientology after learning and objecting to Dayton's commission-based incentive resulted in immediate and total exclusion, demonstrating that economic opportunity and fair treatment were expressly conditioned on religious compliance.

Dayton stood to receive financial or other tangible benefits from Plaintiff's religious recruitment. This conditioning of economic opportunity on religious conformity constitutes coercion and undue influence. Undue influence exists where excessive pressure overcomes a person's free will. Odorizzi v. Bloomfield Sch. Dist., 246 Cal. App. 2d 123 (1966).

Plaintiff was harmed as a direct result of this coercive conduct.

## COUNT V – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendants engaged in extreme and outrageous conduct by fraudulently inducing reliance, using religious coercion tied to financial incentives, retaliating against Plaintiff for refusal, and concealing wrongdoing for decades.

This conduct exceeded all bounds of decency tolerated in a civilized society.

Defendants acted intentionally or with reckless disregard of the probability of causing emotional distress.

Plaintiff suffered severe emotional distress, including post-traumatic stress disorder, as a result.

Intentional infliction of emotional distress is actionable where conduct is outrageous and distress is severe. Metropolitan Life Ins. Co. v. McCarson, 467 So. 2d 277 (Fla. 1985).

## COUNT VI – INTRUSION UPON SECLUSION / INVASION OF PRIVACY (AGAINST THE SCIENTOLOGY DEFENDANTS)

Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

The Scientology Defendants intentionally intruded, physically or otherwise, upon Plaintiff's solitude or seclusion, or into Plaintiff's private affairs, in a manner that would be highly offensive to a reasonable person, including by obtaining and using Plaintiff's residential address and persisting in unwanted contacts over decades. Florida recognizes intrusion upon seclusion as a species of invasion of privacy. See Allstate Ins. Co. v. Ginsberg, 863 So. 2d 156 (Fla. 2003).

Plaintiff expressly withdrew consent to further contact in 2024. Defendants continued anyway.

Under Florida law, intrusion upon seclusion occurs where a defendant intentionally intrudes into a plaintiff's private affairs in a manner that would be highly offensive to a reasonable person. Allstate Ins. Co. v. Ginsberg, 863 So. 2d 156 (Fla. 2003).

Repeated unwanted contact after a clear request to stop, particularly where the defendant tracks a plaintiff across addresses, supports liability for intrusion and IIED. See also Stoll v. Runyon, 165 F.3d 1238 (9th Cir. 1999); Burgess v. Religious Tech. Ctr., 600 F. App'x 657 (11th Cir. 2015).

The First Amendment does not immunize tortious conduct merely because it is undertaken by a religious organization. Claims based on conduct, not belief, are actionable. See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520 (1993); Snyder v. Phelps, 562 U.S. 443 (2011).

Plaintiff suffered damages as a direct and proximate result.

COUNT VII – CIVIL CONSPIRACY (AGAINST SKY DAYTON AND THE SCIENTOLOGY DEFENDANTS)

Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

A civil conspiracy in Florida requires: (a) an agreement between two or more parties; (b) to do an unlawful act or to do a lawful act by unlawful means; (c) an overt act in pursuance of the conspiracy; and (d) damages. Walters v. Blankenship, 931 So. 2d 137, 140 (Fla. 5th DCA 2006); Charles v. Fla. Foreclosure Placement Ctr., LLC, 988 So. 2d 1157, 1160 (Fla. 3d DCA 2008).

Plaintiff alleges that Dayton and the Scientology Defendants acted in concert to use Scientology recruitment tied to incentives as a mechanism to extract value from Plaintiff and to retaliate against Plaintiff when he refused to join, including by conditioning opportunity and fair treatment on religious compliance and by pursuing Plaintiff thereafter through coordinated harassment and coercive contact.

Defendants committed overt acts in furtherance of this agreement, including Dayton's recruitment and retaliatory exclusion and the Scientology Defendants' subsequent decades-long coercive pursuit and intrusion. Plaintiff suffered damages as a result.

COUNT VIII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (AGAINST THE SCIENTOLOGY DEFENDANTS)

Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

The Scientology Defendants' decades-long course of targeted coercive pursuit, tracking, and harassment constitutes extreme and outrageous conduct exceeding all bounds of decency in a civilized community. Metropolitan Life Ins. Co. v. McCarson, 467 So. 2d 277 (Fla. 1985).

The Scientology Defendants acted intentionally or with reckless disregard of the probability of causing Plaintiff severe emotional distress. Plaintiff suffered severe emotional distress, including PTSD and related symptoms, as a direct and proximate result.

## IX. LEGAL THEORIES REGARDING DOWNSTREAM BENEFICIARIES AND ENTERPRISE LIABILITY

A defendant need not be the original promisor to be liable where it knowingly accepts and retains benefits that are traceable to a wrongful scheme or common course of conduct. Equity permits recovery, disgorgement, and unjust enrichment remedies against downstream beneficiaries where retention of the benefit would be inequitable.

Similarly, conspiracy and common-enterprise liability do not require that each participant commit every act; it is sufficient that each knowingly participates in or benefits from a common plan or course of conduct that results in injury to the plaintiff.

## AUTHORITIES SUPPORTING EQUITABLE TOLLING, DELAYED DISCOVERY, AND TRAUMA-BASED INCAPACITY

The following authorities further support Plaintiff's tolling, delayed discovery, and equitable tolling allegations based on fraudulent concealment, continuing tort, and trauma-related incapacity, including post-traumatic stress disorder ("PTSD"):

• Holland v. Florida, 560 U.S. 631 (2010) (Supreme Court): Equitable tolling is available where a litigant shows diligent pursuit of rights and extraordinary circumstances that stood in the way; tolling is a flexible, fact-intensive, equitable doctrine.

17

- Irwin v. Dep't of Veterans Affairs, 498 U.S. 89 (1990) (Supreme Court): Federal equitable tolling applies where equity so requires and is not limited to rigid categories.

- Rotella v. Wood, 528 U.S. 549 (2000) (Supreme Court): Accrual and tolling doctrines, including fraudulent concealment and delayed discovery, turn on when a plaintiff could reasonably discover the injury and its cause.

- Cada v. Baxter Healthcare Corp., 920 F.2d 446 (7th Cir. 1990): Distinguishes equitable tolling and equitable estoppel; tolling applies where extraordinary circumstances prevent timely filing despite diligence.

- Stoll v. Runyon, 165 F.3d 1238 (9th Cir. 1999): Severe trauma and PTSD can constitute extraordinary circumstances justifying equitable tolling where psychological injury prevents timely filing.

- Cantrell v. Knoxville Community Dev. Corp., 60 F.3d 1177 (6th Cir. 1995): Mental incapacity can warrant equitable tolling where the condition prevents the plaintiff from protecting legal rights.

- Doe v. United States, 976 F.2d 1071 (7th Cir. 1992): Psychological trauma may delay discovery of claims and support tolling where a plaintiff cannot reasonably appreciate the causal connection.

- Barrett v. Principi, 363 F.3d 1316 (Fed. Cir. 2004): Mental illness may justify equitable tolling where it renders a litigant incapable of handling legal affairs or understanding the need to file.

• Bills v. Clark, 628 F.3d 1092 (9th Cir. 2010): Sets out framework for mental impairment tolling; severe mental impairment that prevents rational or factual understanding of the need to timely file can justify tolling.

• Burgess v. Religious Tech. Ctr., 600 F. App'x 657 (11th Cir. 2015): Confirms that claims against Scientology entities may proceed based on conduct and tort theories rather than doctrine, and that limitations and tolling issues are fact-dependent.

These authorities, together with the Florida and Eleventh Circuit cases already cited in the Complaint (including Holland, Morsani, Machules, La Grasta, Kendall Lakes, and Raie), independently and collectively establish that Plaintiff's tolling, delayed discovery, and equitable tolling allegations—particularly where compounded by trauma, PTSD, are sufficient to defeat dismissal at the pleading stage and present factual issues not resolvable on a motion to dismiss.

## DAMAGES

Plaintiff seeks compensatory damages, restitution, emotional distress damages, punitive damages, return or value of converted property, prejudgment and postjudgment interest, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against Defendants, that the Court award all damages and equitable relief requested, and that the Court grant such other relief as it deems just and proper.

## JURY DEMAND

19

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 20, 2026

Respectfully submitted,

Brian Evans

Plaintiff, Pro Se

2080 South Ocean Drive, Apt. 1505

Hallandale Beach, Florida 33009

belasvegas@yahoo.com

Case 1:26-cv-20389-LFL   Document 1   Entered on FLSD Docket 01/21/2026   Page 21 of 21

