UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

Case No. 26-cv-20389-BB

FILED BY_____ D.C.

MAR 31 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

BRIAN EVANS,

Plaintiff, pro se,

v.

CHURCH OF SCIENTOLOGY INTERNATIONAL,

SKY DAYTON, an individual,

CHURCH OF SCIENTOLOGY CELEBRITY CENTRE INTERNATIONAL,

Defendants.

**PLAINTIFF'S OPPOSITION TO DEFENDANT SKY DAYTON'S MOTION TO QUASH SERVICE OF PROCESS AND MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Plaintiff Brian Evans, appearing pro se, respectfully files this Opposition to Defendant Sky

Dayton's Motion to Quash Service of Process and Motion to Dismiss the First Amended

Complaint, and states:

**INTRODUCTION**

Defendant Sky Dayton's motion asks this Court to do what Rule 12 does not permit: resolve

disputed facts in Defendant's favor, disregard documentary exhibits attached to the pleading, and

dismiss a pro se complaint with prejudice at the threshold based on credibility arguments and a

statute-of-limitations theory that is not apparent on the face of the First Amended Complaint.

The First Amended Complaint alleges that Dayton introduced Plaintiff to Scientology-related

organizations while simultaneously making representations tied to a then-developing internet

venture later associated with EarthLink, that Plaintiff relied on those representations, that Plaintiff

1

was thereafter subjected to continuing Scientology-related outreach and intrusion, and that Plaintiff ultimately obtained documentary confirmation in November 2025 connecting Dayton to that conduct.

Most importantly, Plaintiff attached a November 14, 2025 letter sent to Plaintiff in Florida from Church of Scientology Celebrity Centre International stating: "You are correct in remembering Sky Dayton and Earthlink. He was the one who introduced you to Celebrity Centre and Scientology." That document is direct documentary support for the core allegations of the First Amended Complaint. Defendant's motion should be denied in its entirety. At minimum, dismissal with prejudice would be plainly improper.

## ARGUMENT

## I. DEFENDANT'S MOTION IMPROPERLY RELIES ON FACTUAL DISPUTES AND SELF-SERVING DENIALS

A motion to dismiss is not a vehicle for Defendant to substitute his version of events for Plaintiff's allegations. At this stage, the Court must accept Plaintiff's well-pleaded allegations as true and draw all reasonable inferences in Plaintiff's favor. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

Defendant's motion does the opposite. It relies on a self-serving declaration to deny involvement, minimize contacts, and dispute the significance of events alleged in the First Amended Complaint. That is not a Rule 12 argument. It is a factual dispute. Where a complaint is supported by documentary evidence, dismissal is improper. See Speaker v. U.S. Dep't of Health & Hum. Servs. Ctrs. for Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010).

Defendant Dayton's declaration should be viewed with caution because it was not simply re-filed unchanged. His earlier declaration addressed the original complaint, while the new one was revised to target the First Amended Complaint and adds a new assertion that Plaintiff "never served his First Amended Complaint" on him—an allegation absent from his prior sworn statement. That shows this is a litigation-tailored declaration crafted to support the exact service and dismissal arguments now being advanced. Defendant also relies on an unsworn, post-service administrative communication from CSC indicating that the documents could not be forwarded, but that document does not rebut valid service: it does not state that CSC was not the registered agent at the time of service, does not dispute that service was accepted, and does not contradict Plaintiff's sworn return of service.

Defendant Dayton also conspicuously minimizes his relationship and history with Plaintiff throughout both declarations, reducing Plaintiff to someone he supposedly met only "briefly" in 1991 and with whom he claims no meaningful recollection thereafter, despite the documentary record attached to the First Amended Complaint—including a letter sent to Plaintiff in Florida expressly stating that "Sky Dayton and Earthlink" were correctly remembered and that Dayton "was the one who introduced [Plaintiff] to Celebrity Centre and Scientology." Notably, Defendant's motion does not meaningfully address or reconcile that document. Rather than engage with the most direct documentary evidence in the record, Defendant relies on a minimized narrative in his declaration, which only underscores why his affidavit cannot be treated as dispositive at the pleading stage.

Plaintiff's exhibits also include a separate Scientology communication stating that Plaintiff's "last dealings with us was 30 years ago when Sky brought you to see us," directly corroborating Plaintiff's allegations regarding Defendant Dayton's role. That statement is independent of and

3

consistent with the other documentary evidence already before the Court, yet Defendant's motion does not address it.

The inconsistency becomes even more pronounced when compared to Defendant's own counsel's correspondence. In that letter, counsel asserts a far more detailed and substantive narrative of interactions between Plaintiff and Mr. Dayton—including specific events, alleged communications, and factual claims about their history—while Defendant's sworn declarations attempt to minimize that same relationship to a brief, insignificant encounter with no meaningful recollection. Those positions cannot be reconciled. A party cannot, on the one hand, advance a detailed factual narrative through counsel when it suits a litigation strategy and, on the other hand, submit a sworn declaration minimizing or disclaiming knowledge of those same underlying facts. At minimum, this internal inconsistency underscores that Defendant's version of events is disputed and evolving, making dismissal at the pleading stage improper.

Defendant, through counsel, also referenced an email in which Plaintiff allegedly said, "You don't owe me anything." Even if such an email exists, it does not negate the claims in the First Amended Complaint because it related to personal issues, not the matters alleged here. Defendant never placed that email before the Court, and any attempt to invoke it out of context only further confirms that factual disputes remain.

Where a defendant submits an affidavit contesting jurisdictional facts, the Court must construe all reasonable inferences in the plaintiff's favor and may not weigh credibility. See Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002). Defendant's assertion that he has "no memory" of Plaintiff or events from 1991 is not evidence negating Plaintiff's claims; it is, at

4

most, a credibility position that cannot defeat well-pleaded allegations supported by documentary evidence.

It is also telling that Defendant Dayton's sworn declaration does not mention any purported email in which Plaintiff allegedly stated, "you don't owe me anything," while defense counsel—rather than Defendant himself—attempted to reference that communication outside any sworn factual account. That omission is significant. If such a communication were truly dispositive of the parties' history or the claims alleged, it presumably would have appeared in Defendant's own declaration under penalty of perjury. Instead, the record reflects the opposite: counsel has alluded to facts and communications never squarely presented by Defendant himself, which only further confirms that this matter involved far more than a single casual "coffee shop" meeting. When considered together with the documentary exhibits already before the Court, that selective presentation further underscores that Defendant's sworn account is incomplete and materially disputed. Additional corroborating evidence—including photographs reflecting the parties together in settings inconsistent with Defendant's minimized narrative—exists and is being obtained as Plaintiff continues recovering personal materials that remain in storage following his relocation from Maui after the wildfires. At minimum, these are classic factual disputes requiring discovery, not dismissal.

## II. DEFENDANT'S ATTEMPT TO SMEAR PLAINTIFF AS A "SERIAL LITIGANT" IS IMPROPER, PREJUDICIAL, AND IRRELEVANT

Defendant's effort to characterize Plaintiff as a "serial litigant" is improper and irrelevant to the issues before the Court. Plaintiff's prior legal matters arise from distinct, fact-specific disputes, including litigation related to the wrongful death of Plaintiff's mother involving multiple

defendants and separate actions based on separate conduct, as well as disputes arising in the ordinary course of Plaintiff's professional activities. Those unrelated matters have no bearing on whether Defendant was properly served, whether personal jurisdiction exists, whether venue is proper, whether the claims are timely, or whether the First Amended Complaint states viable claims.

Defendants' "serial litigant" rhetoric is also materially misleading. One of the lawsuits they cite to inflate that label exists only because counsel for a co-defendant publicly filed statements in this Court accusing Plaintiff of being a "convicted felon" who is currently "incarcerated." Those statements were presented as present-tense assertions and were false. Plaintiff moved to strike and seal them. Defendants cannot create the need for litigation through false public accusations and then cite that resulting lawsuit as supposed proof that Plaintiff is improperly litigious. That is not a legitimate Rule 12 argument; it is manufactured prejudice.

This portion of the motion should be disregarded.

## III. SUBJECT-MATTER JURISDICTION EXISTS, AND ANY TECHNICAL PLEADING ISSUE WOULD BE CURABLE IN ANY EVENT

Defendant argues that Plaintiff inadequately pleaded diversity jurisdiction. That argument does not justify dismissal, much less dismissal with prejudice.

Plaintiff is a citizen of Florida. Defendant Sky Dayton is, upon information and belief and based on his own filings, a citizen of California. The Scientology-related entities named in this case are likewise non-Florida citizens. Complete diversity therefore exists. See 28 U.S.C. § 1332(a); Travaglio v. Am. Express Co., 735 F.3d 1266, 1268–69 (11th Cir. 2013).

The amount in controversy also plainly exceeds $75,000. Plaintiff's claims include, among other things, the wrongful loss and retention of valuable property, fraud-based damages, emotional distress, punitive damages, and other consequential harm. The amount in controversy is not measured by Defendant's selective minimization of Plaintiff's allegations, but by the value of the rights at issue and the damages plausibly recoverable on the claims asserted. See Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1261 n.7 (11th Cir. 2000).

At this stage, the Court need only determine whether the amount in controversy is plausibly alleged. It is. And even if the Court desired greater precision in the pleading of citizenship, the proper remedy would be leave to amend—not dismissal with prejudice. See Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994).

There is no legitimate basis to dismiss this case for lack of subject-matter jurisdiction.

## IV. DEFENDANT IS NOT ENTITLED TO DISMISSAL BASED ON SERVICE

Defendant seeks to quash service and dismiss on the theory that he was never properly served. That argument fails.

Plaintiff filed a sworn return of service reflecting that the summons and complaint were delivered on February 3, 2026, to CSC at 251 Little Falls Drive in Wilmington, Delaware, and that the person accepting service represented that CSC was authorized to accept service on behalf of Sky Dayton. The process server further swore that service was accepted with direct delivery. A return of service that is regular on its face is presumed valid. See Koster v. Sullivan, 160 So. 3d 385, 388–89 (Fla. 2015); Friedman v. Schiano, 777 F. App'x 324, 331 (11th Cir. 2019); Lazo v. Bill Swad Leasing Co., 548 So. 2d 1194, 1195 (Fla. 4th DCA 1989).

7

Once a facially valid return is filed, the burden shifts to the party challenging service to rebut that presumption with clear and convincing evidence. Koster, 160 So. 3d at 388–89; Friedman, 777 F. App'x at 331. And a defendant may not impeach service merely by offering a simple denial of receipt. See Florida Nat'l Bank v. Halphen, 641 So. 2d 495, 496 (Fla. 3d DCA 1994); Slomowitz v. Walker, 429 So. 2d 797, 799 (Fla. 4th DCA 1983).

That is exactly what Defendant tries to do here. He relies on his own declaration and on later CSC rejection correspondence tied to a different entity route. But that later paperwork does not nullify the sworn return already filed, and Defendant's simple denial that he personally received the papers is not enough.

Plaintiff was entitled to rely on the sworn process server's return. Plaintiff is not the one who accepted service; the process server delivered the papers, and the person at CSC represented that service was authorized and accepted. Once that sworn return was made, the burden shifted to Defendant to rebut it with clear and convincing evidence. He has not done so.

At most, Defendant identifies a factual dispute or technical service issue. That is not a basis for terminating the case. Generally, where service of process is insufficient but curable, the appropriate course is to quash service and permit reservice rather than dismiss the action. Pardazi v. Cullman Med. Ctr., 896 F.2d 1313, 1317 (11th Cir. 1990); see also Lepone-Dempsey v. Carroll Cnty. Comm'rs, 476 F.3d 1277, 1282 (11th Cir. 2007).

Moreover, Defendant's motion ignores the most important practical point: he has known about this case, is litigating this case, and has suffered no prejudice whatsoever. Even if the Court were to conclude that any additional or corrected service is necessary as to the First Amended Complaint, the proper remedy would be to permit cure—not dismissal with prejudice. The

Defendants rely on unsworn documentation from the very company that stated they were authorized to accept service on behalf of the Defendants.

## V. THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT SKY DAYTON

Defendant next argues that this Court lacks personal jurisdiction over him. That argument also fails.

A federal court sitting in diversity undertakes a two-part inquiry: whether Florida's long-arm statute is satisfied and whether exercising jurisdiction comports with due process. Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1350 (11th Cir. 2013); United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009).

Plaintiff alleges intentional tortious conduct directed toward a Florida resident, harm suffered in Florida, and documentary confirmation of Defendant's role in the Scientology-related conduct that forms part of the factual basis of Plaintiff's claims. Defendant's motion improperly tries to isolate everything to a single historical moment and pretend that Plaintiff's allegations concern only decades-old conduct in California. They do not.

Most importantly, Plaintiff's November 14, 2025 exhibit directly ties Defendant Dayton to Scientology-related recruitment and outreach, and that letter was sent into Florida to Plaintiff. The letter states: "You are correct in remembering Sky Dayton and Earthlink. He was the one who introduced you to Celebrity Centre and Scientology." That document is not merely background. It is evidence of Defendant's role in the conduct Plaintiff alleges, and it is also evidence of Florida-directed communications and effects.

Florida's long-arm statute reaches tortious acts committed into Florida through communications or conduct directed at a Florida resident. See Internet Sols. Corp. v. Marshall, 39 So. 3d 1201, 1216 (Fla. 2010); Licciardello v. Lovelady, 544 F.3d 1280, 1285–88 (11th Cir. 2008); Louis Vuitton, 736 F.3d at 1353–57.

At minimum, Plaintiff has made a prima facie showing sufficient to defeat dismissal at this stage. Where a defendant submits affidavit evidence, the Court must construe all reasonable inferences in the plaintiff's favor if the evidence conflicts. Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002).

And if the Court concludes that further development is necessary, the appropriate remedy would be limited jurisdictional discovery—not dismissal. See Majd-Pour v. Georgiana Cmty. Hosp., Inc., 724 F.2d 901, 903 (11th Cir. 1984).

## VI. VENUE IS PROPER IN THIS DISTRICT

Venue is proper in the Southern District of Florida because a substantial part of the events and harms giving rise to Plaintiff's claims occurred in this District. See 28 U.S.C. § 1391(b)(2).

Plaintiff resides in this District. Plaintiff received Florida-directed communications in this District, including the November 14, 2025 Scientology letter. Plaintiff suffered injury in this District. Plaintiff's delayed discovery of Defendant's role culminated while Plaintiff was in Florida. The effects and consequences of Defendants' conduct were experienced here.

Defendant's effort to reduce the case to an old California interaction is a mischaracterization of the First Amended Complaint. And even if venue were debatable, transfer—not dismissal with

10

prejudice—would be the appropriate remedy. See 28 U.S.C. § 1406(a); Atl. Marine Constr. Co. v. U.S. Dist. Ct., 571 U.S. 49, 56 (2013).

## VII. DEFENDANT'S STATUTE-OF-LIMITATIONS ARGUMENT FAILS BECAUSE THE FIRST AMENDED COMPLAINT PLAUSIBLY ALLEGES DELAYED DISCOVERY, AND TIMELINESS CANNOT BE RESOLVED ON A MOTION TO DISMISS

Defendant's limitations argument is one of the most overreaching parts of the motion.

Dismissal on statute-of-limitations grounds is appropriate only where it is apparent from the face of the complaint that the claim is time-barred. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845–46 (11th Cir. 2004); Chevaldina v. Ctr. for Individual Rights, 2024 WL 49695, at *1 (11th Cir. Jan. 4, 2024). That is not the case here.

Plaintiff does not contend that he had no suspicion over the years that something was wrong. Rather, Plaintiff's position is that he did not possess documentary confirmation sufficient to connect Defendant Sky Dayton to the Scientology-related recruitment, targeting, and resulting harm alleged in the First Amended Complaint until he received the November 14, 2025 letter that was sent to him in Florida and attached as Plaintiff's exhibit.

That letter expressly states: "You are correct in remembering Sky Dayton and Earthlink. He was the one who introduced you to Celebrity Centre and Scientology." That written admission was the first time Plaintiff received documentary confirmation connecting Defendant Dayton to the very conduct Plaintiff had long suspected but could not previously substantiate.

The same letter also admitted internal record confusion, stating: "We have 3-4 Brian Evans in our files and it is possible information about their interests or progress have been misfiled into your file." In other words, Plaintiff did not suddenly invent a theory in 2025. Plaintiff finally obtained the documentary proof that connected the dots and confirmed the factual basis of what had long appeared suspicious but remained unverified.

That is more than enough to defeat dismissal on statute-of-limitations grounds at the pleading stage. See Raie v. Cheminova, Inc., 336 F.3d 1278, 1281 (11th Cir. 2003). At minimum, the question of when Plaintiff reasonably discovered the factual basis of his claims is a fact-intensive issue that cannot be resolved on a motion to dismiss.

Defendant's reliance on Plaintiff's earlier pleading as a binding contradiction is also overstated. A plaintiff may clarify and refine allegations in an amended complaint, particularly where the amendment responds to issues raised by prior motion practice. The Court should not treat amendment as a concession. See Pintando v. Miami-Dade Hous. Agency, 501 F.3d 1241, 1243 (11th Cir. 2007).

## VIII. THE FIRST AMENDED COMPLAINT STATES A CLAIM FOR FRAUDULENT INDUCEMENT

Defendant argues that Plaintiff's fraud allegations are too vague and fail Rule 9(b). That argument fails.

To satisfy Rule 9(b), a plaintiff must plead the circumstances of fraud with sufficient particularity to place the defendant on notice of the misconduct charged. Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001). But Rule 9(b) must be read in harmony with Rule 8, and it does

12

not require impossible precision where the details are peculiarly within the defendant's knowledge. See Hill v. Morehouse Med. Assocs., Inc., 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003).

Plaintiff alleges that Defendant made specific representations regarding Plaintiff's anticipated involvement in what later became associated with EarthLink, that those representations were made in a broader context involving Scientology-related recruitment and influence, that Plaintiff relied on those representations, and that Plaintiff was harmed as a result. At this stage, that is enough to place Defendant on notice of the nature of the fraud claim and the circumstances underlying it.

Plaintiff's fraud allegations satisfy Rule 9(b). The speaker was Defendant Sky Dayton. The substance of the misrepresentation was Dayton's representation that Plaintiff was being brought into a legitimate and meaningful opportunity tied to what later became associated with EarthLink, when in reality Plaintiff was never going to receive what was being represented. The approximate timeframe was during the parties' direct relationship and interactions in the early 1990s, at the same time Dayton was introducing Plaintiff to Celebrity Centre and Scientology. The mechanism of reliance was trust-based inducement: Dayton used the appearance of friendship, legitimacy, and promised inclusion to cause Plaintiff to reasonably rely on the relationship and the opportunity being held out to him. The November 14, 2025 letter later provided direct written confirmation from Scientology itself validating Plaintiff's longstanding understanding that Dayton was the one who introduced him into that environment. That is sufficient to defeat dismissal under Rule 9(b).

## IX. THE FIRST AMENDED COMPLAINT STATES A CLAIM FOR CONVERSION

Defendant also seeks dismissal of Plaintiff's conversion claim. That argument likewise fails.

Under Florida law, conversion is an unauthorized act depriving another of his property permanently or for an indefinite time. Special Purpose Accounts Receivable Co-op Corp. v. Prime

One Cap. Co., 125 F. Supp. 2d 1093, 1099 (S.D. Fla. 2000); Belford Trucking Co. v. Zagar, 243 So. 2d 646, 648 (Fla. 4th DCA 1970).

Plaintiff alleges that Defendant was involved in the circumstances under which Plaintiff's valuable property was obtained and not returned, that Defendant approved or authorized the relevant transfer, assumed responsibility, and that the property was never returned despite demand. At the pleading stage, Plaintiff is not required to prove who physically held the property at every moment. It is enough that Plaintiff plausibly alleges Defendant's role in the wrongful possession, control, authorization, ratification, and refusal to ensure return.

Plaintiff's conversion allegations are not vague or abstract. Among the specific items at issue is a 1952 Mickey Mantle baseball card, a unique and highly valuable piece of personal property, the loss and non-return of which forms part of the concrete harm alleged in this action. This is not a case involving some undefined monetary expectancy. It involves specifically identifiable personal property that Plaintiff alleges was wrongfully retained, controlled, transferred, or not returned despite demand. Under Florida law, conversion applies directly to such specific personal property, and Plaintiff's allegations are sufficient at the pleading stage to defeat dismissal of that claim.

Defendant also mischaracterizes Plaintiff's allegations regarding the baseball card. Plaintiff never alleged that Defendant Sky Dayton was a stranger to that transaction or uninvolved in the loss of the property. To the contrary, Plaintiff alleged that he permitted Dayton's friend or associate to take possession of the card only because Dayton expressly approved the arrangement, vouched for it, and affirmatively stated that he would "take responsibility" and that Plaintiff would get the card back. That is not an allegation of noninvolvement; it is an allegation that Dayton directly induced, authorized, and assumed responsibility for the transfer and non-return of Plaintiff's property.

14

Defendant's attempt to reduce the issue to whether Dayton personally held the card in his hand ignores the actual allegation: that Plaintiff would not have parted with the property absent Dayton's representations, approval, and undertaking of responsibility. At the pleading stage, those allegations are more than sufficient to state Defendant's personal involvement in the wrongful deprivation of Plaintiff's property.

## X. THE FIRST AMENDED COMPLAINT STATES A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND INTRUSION UPON SECLUSION

Defendant trivializes Plaintiff's allegations by reducing them to "mailings" or isolated communications. That is not what Plaintiff alleges.

To state an IIED claim under Florida law, a plaintiff must allege conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency. Metro. Life Ins. Co. v. McCarson, 467 So. 2d 277, 278–79 (Fla. 1985). Plaintiff alleges a broader course of Scientology-related targeting, recruitment, pressure, and conduct tied to Defendant's role in introducing Plaintiff into that environment, together with resulting emotional harm. Whether conduct is sufficiently outrageous is context-sensitive and should not be reduced to Defendant's sanitized description of the allegations. Read fairly and as a whole, the First Amended Complaint plausibly alleges conduct sufficient to survive dismissal at this stage.

Defendant similarly tries to minimize Plaintiff's privacy-based claim as mere "unsolicited mail." Again, that is not the actual pleading. Under Florida law, intrusion upon seclusion involves an intentional intrusion into a place or private quarters where the plaintiff has a reasonable expectation of privacy. Allstate Ins. Co. v. Ginsberg, 863 So. 2d 156, 162–63 (Fla. 2003). Plaintiff alleges repeated and unwanted Scientology-related outreach, targeting, use of Plaintiff's information, and

15

intrusion into Plaintiff's private life despite Plaintiff's unwillingness to participate. At minimum, Plaintiff has plausibly stated the claim sufficiently to proceed past the pleading stage.

## XI. DISMISSAL WITH PREJUDICE WOULD BE GROSSLY IMPROPER

Even if the Court were to identify any deficiency in any portion of the First Amended Complaint, dismissal with prejudice would still be improper.

This case is at the pleading stage. Plaintiff is pro se. The motion raises issues that are either disputed factual questions, technical matters that are curable, or arguments that overstate what Rule 12 permits. Dismissal with prejudice is disfavored where amendment or cure could address any perceived defect. See Bryant v. Dupree, 252 F.3d 1161, 1163–64 (11th Cir. 2001); Bank v. Pitt, 928 F.2d 1108, 1112 (11th Cir. 1991), overruled in part on other grounds by Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541 (11th Cir. 2002).

There is no basis for the drastic relief Defendant seeks.

## XII. ADDITIONAL REASONS DISMISSAL IS IMPROPER

Dismissal is also improper because Defendant's motion depends on technicalities and factual disputes that do not warrant terminating this action at the pleading stage. Defendant does not—and cannot—meaningfully reconcile the most important documentary exhibit attached to the First Amended Complaint: the November 14, 2025 letter sent to Plaintiff in Florida expressly stating, "You are correct in remembering Sky Dayton and Earthlink. He was the one who introduced you to Celebrity Centre and Scientology." That exhibit is not speculation; it is direct documentary support for Plaintiff's core allegations, and it was directed into Florida, bearing directly on Defendant's efforts to challenge both plausibility and personal jurisdiction. Likewise, Defendant's

service challenge relies not on any sworn denial from CSC disputing acceptance of service, but on an unsworn administrative communication that does not state CSC was not the registered agent at the time of service, does not deny that service was accepted, and does not contradict the filed sworn return of service. Even assuming arguendo that any technical defect existed as to service of the First Amended Complaint, Defendant indisputably received actual notice of the amended pleading and has now fully responded to it on the merits, showing no prejudice whatsoever; under those circumstances, any defect would plainly be curable and would not justify dismissal. More broadly, Defendant's position is internally inconsistent and evolving: he minimizes his relationship with Plaintiff in sworn filings while his own counsel has advanced a more detailed factual narrative, and his motion still does not meaningfully address documentary exhibits that directly contradict that minimized account. For all of those reasons, Defendant's motion asks the Court to do what Rule 12 does not permit—credit Defendant's disputed version of events, overlook documentary evidence, and impose the drastic remedy of dismissal where, at most, factual development or cure would be appropriate. Dismissal is also improper because Defendant's motion repeatedly asks the Court to do what Rule 12 does not permit: resolve disputed facts, weigh competing evidence, and credit Defendant's preferred narrative over Plaintiff's well-pleaded allegations and supporting exhibits. At this stage, Plaintiff is not required to prove his case or disprove every competing explanation offered by Defendant; he is required only to allege sufficient facts to state plausible claims for relief, which he has done. The exhibits attached to Plaintiff's pleading and opposition do not undermine the claims—they reinforce them by making the allegations more concrete and plausible, while simultaneously exposing factual inconsistencies and credibility issues that cannot be resolved on a motion to dismiss. To the extent Defendant advances shifting or inconsistent explanations concerning the nature of the parties' relationship, the underlying transactions, or what

17

was represented to Plaintiff, those issues only confirm that factual development and discovery are required rather than dismissal. And to the extent the Court finds any portion of the pleading insufficiently detailed, the proper remedy would be leave to amend—not dismissal with prejudice—particularly where Plaintiff is proceeding pro se and has presented a factually supported, nonfrivolous basis for relief.

Defendant's sworn submissions also underscore why dismissal is improper because they do not present a fixed, neutral factual account, but instead an evolving litigation position that shifts as Defendant's procedural arguments shift. Rather than simply standing on one consistent declaration, Defendant submitted a revised affidavit after the First Amended Complaint that added a new sworn service-related assertion tailored to the amended pleading, while continuing to frame Plaintiff as nothing more than a brief, insignificant encounter from 1991. Yet that minimized account is difficult to reconcile with the broader factual narrative Defendant's own motion is forced to address, including alleged business representations, Scientology introduction, the baseball card transaction, and later documentary confirmation. Just as importantly, neither declaration actually neutralizes Plaintiff's attached exhibits or eliminates the factual disputes they create. Read together with the surrounding filings, the declarations do not simplify the case into something appropriate for dismissal—they instead reinforce that Defendant's version of events is contested, selectively framed, and dependent on factual determinations that cannot properly be resolved on a motion to dismiss.

Defendant's motion also fails because it repeatedly asks the Court to do what Rule 12 does not permit: resolve contested facts, credit Defendant's self-serving declaration over Plaintiff's allegations and exhibits, and dismiss claims that are plausibly and materially disputed on the existing record. A facially valid return of service is presumed valid and cannot be defeated by a

18

bare denial or by unsworn post hoc administrative correspondence, particularly where Defendant indisputably received actual notice and has now fully litigated the First Amended Complaint on the merits. Likewise, Defendant's personal-jurisdiction and venue arguments improperly ignore the Florida-directed effects of the conduct alleged, including documentary confirmation sent to Plaintiff in Florida tying Defendant to the underlying conduct and reinforcing the plausibility of Plaintiff's claims. Most importantly, Defendant's statute-of-limitations arguments cannot be resolved on a motion to dismiss because the First Amended Complaint plausibly alleges delayed discovery and later documentary confirmation of Defendant's role, making timeliness a factual issue not suitable for disposition at the pleading stage. Read as a whole, Defendant's motion depends on factual denials, selective omissions, and legal overreach rather than any true pleading defect apparent on the face of the First Amended Complaint, and for that reason it should be denied in its entirety.

## CONCLUSION

The documentary record attached to Plaintiff's pleading and opposition reinforces why dismissal is improper. **Exhibit A** contains Scientology's written admission that "Sky Dayton and Earthlink" were correctly remembered and that Dayton introduced Plaintiff to Celebrity Centre and Scientology; **Exhibit B** reflects defense counsel's own far more detailed narrative of Plaintiff's relationship and interactions with Dayton; **Exhibit C** reflects Plaintiff's sworn factual account; and **Exhibit D** reflects Dayton's sworn declaration minimizing those same facts. Read together, those exhibits do not eliminate factual disputes—they confirm them.

For all of the foregoing reasons, Defendant Sky Dayton's Motion to Quash Service of Process and Motion to Dismiss the First Amended Complaint should be DENIED in its entirety.

19

Plaintiff further notes that this Court has previously stated it will not consider new arguments raised for the first time in reply. To the extent Defendant nevertheless attempts to raise any new issues in reply, Plaintiff respectfully requests the opportunity to respond if the Court deems any such response necessary.

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendant Sky Dayton's Motion to Quash Service of Process and Motion to Dismiss the First Amended Complaint, permit this action to proceed on the merits, and grant such other and further relief as the Court deems just and proper.

Dated: March 30, 2026

Respectfully submitted,

Brian Evans

2080 South Ocean Drive, Apt. 1505

Hallandale Beach, Florida 33009

954-214-3076

belasvegas@yahoo.com

Plaintiff, pro se

## CERTIFICATE OF SERVICE

20

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by U.S. Mail on this 30th day of March, 2026, upon:

Justin B. Elegant, Esq.

Berger Singerman LLP

1450 Brickell Avenue, Suite 1900

Miami, Florida 33131

Michael H. Strub, Jr., Esq.

Jeffer Mangels & Mitchell LLP

3 Park Plaza, Suite 1100

Irvine, California 92614

Alan J. Perlman

Dickinson Wright PLLC

350 East Las Olas Blvd

Suite 1750

Ft Lauderdale, FL 33301

954-991-5420

Fax: 1-844-670-6009

Email: aperlman@dickinsonwright.com


Daniel R Lazaro

Buchanan Ingersoll & Rooney PC

2 South Biscayne Blvd

Suite 1500

Miami, FL 33131

305-347-4081

Email: dan.lazaro@bipc.com


Jennifer Julia Vaquerano

Dickinson Wright PLLC

350 E Las Olas Blvd #1750

Fort Lauderdale, FL 33301

305-794-9781

Email: jvaquerano@dickinson-wright.com

Dated: March 30, 2026

Respectfully submitted,

Brian Evans

2080 South Ocean Drive, Apt. 1505

23

Hallandale Beach, Florida 33009

954-214-3076

belasvegas@yahoo.com